IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PATRICIA MURPHY,

                         Plaintiff,

    v.

STUPAR, SCHUSTER & BARTELL, SC,

                         Defendant.

OPINION & ORDER

17-cv-568-jdp

---

Plaintiff Patricia Murphy is suing defendant Stupar, Schuster & Bartell, SC for bringing a debt collection lawsuit against her on a debt that was not legally enforceable, in violation of the Fair Debt Collection Practices Act. Stupar has moved for summary judgment, Dkt. 22, contending that the FDCPA did not bar the collections suit.

The court will deny Stupar's motion for summary judgment for essentially the same reasons that the court denied Stupar's motion to dismiss, Dkt. 5. In short, binding precedent allows debtors to sue lawyers under the FDCPA for bringing debt collection lawsuits that are based on an unenforceable debt. Even if the court were to construe the FDCPA as including an implicit "good faith" exception to liability, Stupar would not be entitled to such a defense because the law was clear at the time that Stupar filed the collections lawsuit that Murphy's debt was not enforceable.

The issues that Stupar raised in its motion are legal and neither side has identified any factual disputes regarding liability, raising the question whether a trial is needed on any issues other than damages. The court will direct Stupar to show cause why summary judgment should not be granted in Murphy's favor.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

In 2007, plaintiff Patricia Murphy and her partner, Patricia Gaffney, received a secured loan from Associated Bank, N.A. In 2009, Murphy filed a petition for bankruptcy, listing Associated as one of her creditors. During the proceedings, Murphy's lawyer filed a document called a reaffirmation agreement, which stated that Murphy agreed to repay her debt to Associated. (The document includes an electronic signature in Murphy's name, but she denies that she authorized her lawyer to file the document.) Murphy received an order of discharge from the bankruptcy court.

When Murphy and Gaffney stopped making payments on the loan, Associated sued them both in state court through its counsel, defendant Stupar, Schuster & Bartell, SC. Associated and Stupar alleged that Murphy "reaffirmed the debt with [Associated] by completing a Reaffirmation Agreement" and was "entitled" to collect more than $40,000 from Murphy. Dkt. 25-6, ¶¶ 8 and 10. Murphy contended that she was not liable for the debt because the reaffirmation agreement was not enforceable. Specifically, Murphy said that the agreement was missing information required by law.

Associated, again through Stupar, sought to reopen the bankruptcy proceedings to determine the enforceability of the reaffirmation agreement. After holding a hearing, the bankruptcy court denied the motion but did not provide a written explanation. The parties also continued litigating Associated's debt collection claim against Murphy and Gaffney. The state court ruled in favor of Associated as to its claim against Gaffney, but dismissed the claim against Murphy on the ground that the reaffirmation agreement was invalid and Murphy's debt to Associated had been discharged. Associated and Stupar did not appeal either decision.

2

ANALYSIS

A.  **Overview of the claim**

Murphy is bringing her claim under 15 U.S.C. § 1692e, which states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The statute lists 16 nonexhaustive examples of prohibited conduct, including "[t]he false representation of . . . the character, amount, or legal status of any debt." § 1692e(2).

The primary question raised in Stupar's motion for summary judgment is whether Stupar violated the FDCPA by maintaining a debt collection action against Murphy in state court. Murphy's view is that Stupar's state court complaint was a false representation about the legal status of her debt because the complaint falsely implied that Associated has a legal right to collect a debt that was discharged in bankruptcy. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004) ("A demand for immediate payment . . . after the debt's discharge . . . is 'false' in the sense that it asserts that money is due, although, because of the . . . discharge injunction (11 U.S.C. § 524), it is not."). Stupar does not deny at this point that the reaffirmation agreement is invalid and that Murphy's debt to Associated was therefore discharged. But Stupar's view is that Murphy is attempting to hold it liable for simply bringing an unsuccessful lawsuit. This is essentially the same debate that the parties had in the context of Stupar's motion to dismiss, so it makes sense to review the court's reasoning for denying that motion.

B.  **Summary of the order on the motion to dismiss**

At the outset, the court acknowledged that Stupar's position had some force in the abstract. Dkt. 18, at 4. There is an instinctive appeal to the view that a debt collector should

3

not be held liable under the FDCPA simply because it loses a debt collection lawsuit. But the court denied the motion to dismiss for the simple reason that case law from both Supreme Court and the Court of Appeals for the Seventh Circuit already established several principles that supported Murphy's claim:

- § 1692e applies to a lawyer's conduct that occurs in the context of litigation, *Heintz v. Jenkins*, 514 U.S. 291 (1995);

- a complaint can qualify as a false representation under § 1692e, *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 810 (7th Cir. 2016);

- a misrepresentation about whether a debt is legally enforceable violates § 1692e, *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014);

- a false representation can violate § 1692e even if it is unintentional, *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003);

- a mistaken interpretation of the FDCPA is not a defense to liability, *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010).

*Jerman* seemed particularly helpful for Murphy. The Supreme Court did not question whether legal mistakes could qualify as false representations under the FDCPA and it did not distinguish between reasonable and unreasonable mistakes. *Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 713 (6th Cir. 2015) ("[*Jerman*] makes clear that mistakes of state law can give rise to liability.") (citation omitted). A concurring justice acknowledged that the "Court's interpretation . . . may create a dilemma for lawyers who regularly engage in debt collection, including through litigation" because those lawyers have limited options for obtaining a definitive interpretation on the scope of the FDCPA before filing a collection action. *Jerman*, 559 U.S. at 605 (Breyer, J., concurring). And the dissenting justices believed that "[a]ttorneys may now be held liable for taking reasonable legal positions in good faith if those positions are ultimately rejected." *Id.* at 621 (Kennedy, J., dissenting).

The Court's holding was limited to legal mistakes about the FDCPA, *id.* at 580 n.4, but the Court's reasoning focused on the differences between factual and legal mistakes generally. *E.g., id.* at 582 ("Our law is . . . no stranger to the possibility that an act may be 'intentional' for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law."); *id.* at 587 ("[T]he broad statutory requirement of procedures reasonably designed to avoid 'any' bona fide error indicates that the relevant procedures are ones that help to avoid errors like clerical or factual mistakes."); *id.* at 599 ("[L]awyers may invoke the bona fide error defense, for instance, where a violation results from a qualifying factual error."). This reasoning applies equally to any kind of legal error.

In denying Stupar's motion to dismiss, this court also noted multiple cases in which the court of appeals has ruled in favor of debtors on claims that a debt collector violated § 1692e for making a false legal representation even when the debt collector raised arguments that the underlying debts were in fact enforceable. Dkt. 18, at 5–6. For example, in *Phillips v. Asset Acceptance*, LLC, 736 F.3d 1076, 1079 (7th Cir. 2013), the court held that filing a time-barred debt collection action is itself a violation of § 1692e because such a suit falsely implies that the debt collector has legal recourse to collect the debt. The parties in *Phillips* (which was a class action) debated which statute of limitations applied to the underlying debt collection suits and the defendant contended that at least some of those suits were timely. *Phillips,* 736 F.3d at 1081–82. But rather than concluding that the debate precluded the lawsuit altogether, the court resolved the debate in favor of the plaintiffs and allowed the case to proceed. *Id.* at 1082. The court did not say that the defendant's position was frivolous or made in bad faith, only that the position was wrong.

In *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 471 (7th Cir. 2000), the plaintiff was suing the defendant under § 1692e for representing in a debt collection lawsuit that it had the right to collect a debt because it was subrogated to the rights of a creditor. The parties debated whether the defendant qualified as a subrogee under state law. Again, the court resolved the debate in favor of the plaintiff, concluding that "Section 1692e applies even when a false representation was unintentional" and that the defendant had violated § 1692e by giving "a false impression as to the legal status [the defendant] enjoyed." *Id.* at 472.

In *Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 352 (7th Cir. 2017), the plaintiffs contended that the defendant violated § 1692e by falsely stating in a state court complaint that the plaintiffs could be held personally liable for a deficiency judgment. After reviewing the relevant laws and regulations, the court concluded that the defendant had not misstated the law, so the court ruled in favor of the defendant. *Heng* is less informative than *Phillips* and *Gearing*, but the case is still noteworthy because the court assumed that a legally disputed debt can be the basis of a claim under the FDCPA if the defendant's interpretation of the law is incorrect.

After reviewing these cases, this court concluded that they supported two related points: (1) courts may determine in the context of an FDCPA action whether a debt collection complaint is "false" on the ground that the debt at issue is legally defective; and (2) a defendant cannot avoid liability under § 1692e simply because the validity of the debt is not clearly established before the plaintiff files her FDCPA claim. Dkt. 18, at 5–6. Although the law did not appear to support a "good faith" defense for legal errors, the court concluded that Stupar did not show that it would be entitled to such a defense even if one existed. Stupar did not articulate any arguments in support of a conclusion that the reaffirmation agreement was

enforceable despite the absence of required information. *Id.* at 7–8. For these reasons, the court denied Stupar's motion to dismiss.

**C. Stupar's arguments on summary judgment**

In its opening summary judgment brief, Stupar does not address any of the court's reasoning or the case law the court cited in the order on the motion to dismiss. Instead, Stupar cites cases from other circuits and raises some new arguments. Although Stupar addresses some of the relevant case law in its reply brief, it does not explain why it failed to do so in its opening brief. Regardless, the court concludes that Stupar has failed to show that it is entitled to summary judgment.

   **1. Circuit law**

Stupar distinguishes *Marquez* on the ground that the court discussed misrepresentations included in a complaint; the court did not hold that "a lawsuit itself" can be the basis of a claim under § 1692e. Dkt. 32, at 6–7. But regardless of the scope of *Marquez*, the court held in *Phillips* that filing a debt collection lawsuit could qualify as a false representation if the lawsuit falsely implies that a debt is legally enforceable. *See also Suesz v. Med-1 Sols., LLC*, 757 F.3d 636, 639 (7th Cir. 2014) (debt collector violates § 1692e by "suing a debtor after the statute of limitations has expired").

Stupar distinguishes *Phillips* and *Gearing* on the ground that "neither [case] involved a claim against a debt-collection attorney," Dkt. 32, at 7, but it is not clear why that matters. The court of appeals did not suggest in either case that the identity of the defendant was relevant and Stupar does not cite any cases in which the court of appeals has suggested that the FDCPA should apply differently to attorneys. Accordingly, the court adheres to its conclusion that Seventh Circuit law supports Murphy's claim.

## 2. Supreme Court law

Perhaps realizing that circuit law supports Murphy, Stupar says that the case law is "contrary" to *Heintz*. Dkt. 32, at 8. Stupar relies on *Heintz* for two propositions: (1) the FDCPA may require a court to recognize an "additional, implicit exception" to the law in the context of claims against an attorney; and (2) an unsuccessful lawsuit cannot be the basis of a claim under the FDCPA. Stupar also relies on *Jerman* for the proposition that applying the FDCPA to attorneys in the context of this case would be absurd. But neither *Heintz* nor *Jerman* supports Stupar's view.

The Court held in *Heintz* that lawyers litigating a debt collection lawsuit can be "debt collectors" within the meaning of the FDCPA. In the first passage that Stupar cites—about an "implicit exception" to FDCPA liability for lawyers—the Court was discussing § 1692c(c), which prohibits a debt collector from communicating with a consumer who notifies the debt collector that he or she wishes the debt collector to cease further communication. *Heintz*, 514 U.S. at 296–97. Section § 1692(c) has exceptions to the general rule for communications that "notify the consumer that the debt collector or creditor may invoke" or "intends to invoke" a "specified remedy" (of a kind "ordinarily invoked by [the] debt collector or creditor"). 15 U.S.C. § 1692(c)(2) and (3). In rejecting a conclusion that § 1692c(c) would prohibit lawyers from communicating with debtors in the context of a lawsuit, the Court stated that "[c]ourts can read the[] exceptions, plausibly, to imply that they authorize the actual invocation of the remedy that the collector 'intends to invoke.'" *Heintz*, 514 U.S. at 296.

The above discussion stands for the unremarkable proposition that courts should give ambiguous provisions the most reasonable construction. The Court did not suggest that a federal court has discretion to simply insert exceptions for lawyers into the FDCPA whenever

that court believes it would be wise to do so. In fact, the Court stated just the opposite in *Jerman*: "arguments that the Act strikes an undesirable balance in assigning the risks of legal misinterpretation are properly addressed to Congress." 559 U.S. at 604.

For Stupar's second proposition—that an unsuccessful collections lawsuit cannot be the basis of a claim under the FDCPA—Stupar quotes the following statement: "we do not see how the fact that a lawsuit turns out to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken.'" *Heintz,* 514 U.S. at 295–96. That statement comes from a larger discussion in which the Court was responding to an argument made by the lower court about § 1692e(5), which prohibits a "debt collector" from making any "threat to take action that cannot legally be taken." According to the lower court, if a lawyer could qualify as a debt collector, § 1692e(5) "would make liable any litigating lawyer who brought, and then lost, a claim against a debtor." *Heintz*, 514 U.S. at 295. The Court rejected this view, noting that a debt collector could avoid liability under § 1692k(c) if his violation was the result of a bona fide error, so, even if the lower court's reading of § 1692e(5) were correct, the Court "would not find the result so absurd as to warrant implying an exemption for litigating lawyers." *Heintz*, 514 U.S. at 295. And then the Court made the observation on which Stupar relies. *Id.* at 295–96 ("In any event, the assumption would seem unnecessary, for we do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken.'").

The quoted statement from *Heintz* does not require a ruling in Stupar's favor for several reasons. First, the statement was about a provision not at issue in this case, so the statement could not override circuit law applying § 1692e(2). Second, the Court did not identify any specific examples in which it would be inappropriate to hold a debt collector liable. In fact, the

9

Court stated that the lower court's expansive reading of § 1692e(5) would *not* be absurd. So it would not be reasonable to read the statement as prohibiting FDCPA claims based on legal mistakes.

Third, in *Jerman*, the Court limited the reach of the quoted statement when the Court held that § 1692k(c) did not apply to legal mistakes about the scope of the FDCPA, even if the mistake was a reasonable one. The defendant in *Jerman* relied on the same statement from *Heintz*, but the Court said that the statement was not controlling:

> We had no occasion in *Heintz* to address the overall scope of the bona fide error defense. Our discussion of § 1692e(5) did not depend on the premise that a misinterpretation of the requirements of the Act would fall under the bona fide error defense. In the mine-run lawsuit, a lawyer is at least as likely to be unsuccessful because of factual deficiencies as opposed to legal error. Lawyers can, of course, invoke § 1692k(c) for violations resulting from qualifying factual errors.

*Jerman*, 559 U.S. at 594. Again, the holding of *Jerman* was limited to legal errors about the FDCPA. But Stupar offers no reason why the reasoning in *Jerman* should not apply equally to other kinds of legal errors. In any event, this court held long ago that § 1692k(c) does not apply to legal errors of any sort. *Hartman v. Meridian Fin. Servs., Inc.*, 191 F. Supp. 2d 1031, 1045–46 (W.D. Wis. 2002).

Finally, Stupar relies on a statement in *Jerman* that the FDCPA "should not be assumed to compel absurd results when applied to debt collecting attorneys." *Jerman*, 559 U.S. at 600. But that is simply a restatement of a general principle of statutory construction. *Logan v. U.S.*, 552 U.S. 23, 36 (2007) ("Statutory terms, we have held, may be interpreted against their literal meaning where the words could not conceivably have been intended to apply to the case at hand.") (internal quotations omitted). The Court rejected a view that it is absurd to hold attorneys liable for legal mistakes, stating that "[i]t is far from obvious why immunizing debt

collectors who adopt aggressive but mistaken interpretations of the law would be consistent with the statute's broadly worded prohibitions on debt collector misconduct." *Jerman*, 559 U.S. at 602.

In this case, Stupar does not explain why it would be absurd to make lawyers and non-lawyers equally liable for false statements about the legal status of a debt. If anything, it is lawyers rather than non-lawyers who should be held to a higher standard to accurately state the law. The court sees nothing in *Heintz* or *Jerman* that supports a dismissal of Murphy's claim.

### 3. Case law from other circuits

In its opening brief, Stupar relies primarily on *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814 (8th Cir. 2012). It adds *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291 (11th Cir. 2015), in its reply brief. But neither case is instructive because both cases involved *factual* disputes about the validity of the debt. *Miljkovic*, 791 F.3d at 1306–07 (reply brief in debt collection lawsuit was not false because, "at the time the sworn reply was filed, the facts underlying Appellant's right to an exemption were in dispute"); *Hemmingsen*, 674 F.3d at 819 (debt collector did not make false representation about the validity of a debt when various pieces of evidence supported the debt collector's position). Thus, *Miljkovic* and *Hemmingsen* are simply extensions of *Jerman*, in which the Court distinguished legal and factual mistakes. In fact, the Court of Appeals for the Eighth Circuit has made the same distinction: it held in an earlier case that legal mistakes are not a defense to liability under the FDCPA. *Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451–52 (8th Cir. 2001) ("We have previously addressed the use of the bona fide error defense in cases of mistake in legal judgment and concluded that reliance on the advice of counsel or a mistake about the law is not protected by the bona fide error defense.") (internal quotations omitted).

More on point is *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 451 (6th Cir. 2014), in which the court held that a lawyer debt collector violated the FDCPA by filing a complaint in state court that sought to collect interest not authorized under state law, even though no court had previously held that the interest was not authorized. Although this court cited *Stratton* in the order denying Stupar's motion to dismiss, Dkt. 18, at 6. Stupar does not try to distinguish *Stratton* or contend that it was wrongly decided.

**4. Good faith defense**

Even if this court were to agree with Stupar that lawyers cannot be held liable under the FDCPA for all legal mistakes about the validity of a debt, Stupar does not identify a standard that should apply. Stupar cites no authority that would support a view that a lawyer's legal mistakes can never qualify as a violation. And such a view would be inconsistent with *Heintz* and *Jerman*.

In its motion to dismiss, Stupar suggested that a lawyer should not be held liable if he or she acted in "good faith." Dkt. 17, at 3. Stupar does not expressly advocate for that standard in its motion for summary judgment, but it uses similar language. For example, in its opening brief, it says that a "factually and legally-supported lawsuit to collect a debt does not become a 'false representation' as to the legal status of a debt simply because the suit is unsuccessful." Dkt. 24, at 2. And in its reply brief, it says that "section 1692e does not prohibit debt-collector attorneys from making colorable legal arguments in an effort to collect a debt on behalf of their clients, even if those arguments eventually are rejected by the court." Dkt. 32, at 10.

Some district courts have adopted a "good faith" standard similar to that suggested by Stupar. *E.g.*, *Juarez v. Portfolio Recovery Assocs., LLC*, No. 14 C 5928, 2015 WL 4764226, at *3 (N.D. Ill. Aug. 12, 2015) ("A debt collector that files suit expecting in good faith to prove its

12

claim, even if he does not ultimately prevail, will not be liable under the FDCPA."); *Torrie v. Goodman Law Offices PC*, No. CV-13-2659, 2014 WL 5594452, at *4 (D. Ariz. Nov. 4, 2014) ("[A] complaint violates the FDCPA only when the complaint is frivolous."); *McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1277 (M.D. Fla. 2008) ("Parties and their counsel must be free to make novel legal arguments, including arguments which turn out to be without merit in areas of unsettled law, so long as there is a good faith basis for doing so."). As the court noted above, it is not unreasonable in the abstract to conclude that debt collectors should be free to file claims made in good faith. But missing from these decisions is a citation to any language in the FDCPA that justifies the "good faith" standard, any reasoning regarding where the good faith standard comes from, or even any case law besides other district court opinions. District courts do not have authority to simply insert exceptions into a statute, no matter how reasonable an exception might seem. *Soppet v. Enhanced Recovery Co.*, LLC, 679 F.3d 637, 642 (7th Cir. 2012) ("Courts do try to avoid imputing nonsense to Congress. This means, however, modest adjustments to texts that do not parse. It does not mean—at least, should not mean—substantive changes designed to make the law 'better.' That would give the judiciary entirely too much law-making power.").

Before the Supreme Court decided *Jerman*, the court of appeals assumed that mistakes of law could be a defense to liability under the FDCPA "when the law is unsettled, but not when it is reasonably clear." *Nielsen v. Dickerson*, 307 F.3d 623, 641–42 (7th Cir. 2002) (citing Janet Flaccus, *Fair Debt Collection Practices Act: Lawyers and the Bona Fide Error Defense*, 2001 Ark. L. Notes 95 (2001)). This is similar to the approach that was taken in the Eighth Circuit. *Hulshizer v. Global Credit Servs., Inc.*, 728 F.2d 1037, 1038 (8th Cir. 1984) (finding no basis to

13

invoke the bona fide error defense where "[t]he language of the statute [was] unambiguous and [the creditor's] disregard of that language [was] undisputed").

Because those cases were decided before *Jerman*, it is questionable whether they remain good law. But even if the court were to accept the view that a lawyer cannot be held liable under the FDCPA for legal mistakes when the law is unsettled or if the lawyer acted in good faith, Stupar has not shown that its debt collection lawsuit meets that standard. As the court explained in denying the motion to dismiss, when Stupar filed its lawsuit against Murphy, the Wisconsin Court of Appeals had already considered the same issue that Murphy raised: whether a reaffirmation agreement is enforceable under 11 U.S.C. § 524 if the agreement does not include a completed "Part D" disclosure. *Klein v. Duren Law Offices, LLC*, 2014 WI App 45, 353 Wis. 2d 554, 846 N.W.2d 34. The court of appeals concluded that such an agreement was not enforceable, relying solely on the plain language of § 524. *Id.* at ¶ 12 ("Stripped down to the most pertinent language, § 524 directs: 'The law requires you to . . . [c]omplete and sign Part D,' and the failure to do so means that 'the reaffirmation agreement is not effective, even though you have signed it.'").

The analysis in *Klein* is simple and straightforward. And Stupar does not offer any reason for reaching a different conclusion. In fact, Stupar does not make any effort to defend the position it took in state court. In its reply brief, Stupar says that it "sought to distinguish [*Klein*] on its facts." Dkt. 32, at 5. Stupar does not provide any context, but it did attach a copy of its state court brief. In that brief, Stupar did not cite any authority in support of its position and it "concede[d] that Part D is not fully completed." Dkt. 25-8, at 9. Although Stupar said that other parts of the reaffirmation agreement included the missing information

and that Part D was signed, Stupar did not develop an argument as to why that mattered. So even if § 1692e included a good faith defense, Stupar would not be entitled to it.

   5. **Section § 1692(b)**

Stupar relies on § 1692g(b) and the court of appeals's discussion of that provision in *Walton v. EOS CCA*, 885 F.3d 1024 (7th Cir. 2018). Under § 1692g(b), when a consumer notifies the debt collector that the consumer is disputing a debt notice, the debt collector must cease collection of the debt until "the debt collector obtains verification of the debt," among other things. The court held that a debt collector satisfies its obligation to "verif[y]" the debt by "verify[ing] that its letters to the consumer accurately convey the information received from the creditor." *Walton*, 885 F.3d at 1027. The debt collector does not have to verify the validity of the underlying debt.

Stupar acknowledges that the interpretation of § 1692g has no direct bearing on § 1692e, but it says that the two provisions are related:

> It would make little sense for the FDCPA to shield a debt collector from liability under 1692g for confirming that a creditor believed that the debt sought to be collected was valid, only to impose liability on the debt collector for suing to collect the debt if, after litigation, it is shown that the creditor's belief as to the validity of the debt was mistaken.

Dkt. 24, at 12. This arguments rests on a misunderstanding of the differences between § 1692g and § 1692e. As explained by the court of appeals, § 1692b(g) "serves as a check on the debt-collection agency," not the creditor or the underlying debt. *Walton*, 885 F.3d at 1028. Its purpose is to "arm[] [the consumer] with the information she need[s] to sufficiently dispute the payment obligation." *Id.* (internal quotations omitted).

In other words, when a debt collector verifies a debt under § 1692g, it is not vouching for the accuracy of the *creditor's* representations. But if the debt collector takes the step of filing

15

a lawsuit—and makes its own representations of fact and law—it can be held liable under § 1692e for any false representations it makes. Section 1692g does not provide immunity to a debt collector for failing to review the law that renders its debt unenforceable.

### 6. Estoppel

Finally, Stupar contends that Murphy's claim is barred by the doctrines of equitable estoppel and judicial estoppel. But Stupar relies on Wisconsin law to support an equitable estoppel defense. A defense under state law cannot defeat a federal claim. *Martinez v. California*, 444 U.S. 277, 284, n. 8 (1980). And Stupar cites no authority for the view that federal law would recognize a defense of equitable estoppel under the facts of this case.

As for judicial estoppel, that doctrine "prevents a party from prevailing on an argument in an earlier matter and then relying on a contradictory argument to prevail in a subsequent matter." *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013). Federal courts consider three factors when determining whether a party is judicially estopped from raising an argument: (1) whether the party's positions in the two cases are clearly inconsistent; (2) whether the party successfully persuaded a court to accept its earlier position; and (3) whether the party would derive an unfair advantage if not judicially estopped. *Id.*

Stupar ignores this standard. It does not identify any argument that Murphy raised in an earlier case that is clearly inconsistent with her claim in this case. Instead, Stupar alleges that Murphy "was allowed to avoid a foreclosure of Associated Banks' security interest by executing the Reaffirmation Agreement," so "[s]he may not claim now that the agreement was invalid." Dkt. 24, at 13. Stupar cites no evidence to support its allegation that the reaffirmation

16

agreement prevented a foreclosure. Regardless, because Stupar does not identify any inconsistent arguments, it cannot prevail on a judicial estoppel defense.[1]

**D. Conclusion**

The bottom line is that Stupar has failed to provide any justification for its state court lawsuit. The court sees no difference between this case and *Phillips*, in which the court of appeals held that a lawsuit filed after the statute of limitations expires is a violation of § 1692e. Both cases involve complaints that falsely imply that the debt collector has a legally enforceable right. And both cases involve legal errors rather than factual disputes.

If anything, this case is stronger than *Phillips* because the parties in *Phillips* actually debated whether the underlying debt collection suits were untimely. In this case, Stupar does not try to defend the position it took in the debt collection lawsuit and, even if it had, a review of the relevant statute makes clear that the reaffirmation agreement is not enforceable. It may be that Stupar was unaware of the requirements in § 524 when it filed the lawsuit, but that is not relevant under § 1692e. *Turner*, 330 F.3d at 995 ("[U]nder § 1692e ignorance is no excuse."); *Gearing*, 233 F.3d at 471 (debt collector held liable under § 1692e because "insufficient time was spent studying the nuances of subrogation law").

So it's clear that Stupar is not entitled to summary judgment. The question remains whether the court should grant summary judgment to Murphy as to liability. Murphy did not move for summary judgment, but the issues Stupar raised are questions of law that the court

---

[1] Stupar also mentions in passing its constitutional right to have access to the courts. But Stupar does not develop an argument in support of a view that applying the FDCPA in this context would violate that right, so the argument is forfeited. Stupar also argues against a hypothetical claim that Murphy's partner, Patricia Gaffney, might have brought if the state court had dismissed Associated's claim against her. Dkt. 24, at 9–10 and Dkt. 32, at 4. Because Gaffney did not bring such a claim, the court need not consider it.

has resolved in Murphy's favor. Because neither side has identified any disputed facts that a jury would need to resolve to determine liability, it is not clear whether a trial on liability is required.

A court may grant summary judgment to a party on the court's own motion so long as the opposing party has notice and an opportunity to show that summary judgment is not appropriate. *Ellis v. DHL Exp. Inc. (USA)*, 633 F.3d 522, 529 (7th Cir. 2011). Accordingly, the court will direct Stupar to show cause why summary judgment should not be granted to Murphy as to liability so that the trial is limited to the issue of damages.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by defendant Stupar, Schuster & Bartell, SC, Dkt. 22, is DENIED.

2. Stupar may have until September 4, 2018, to show cause why summary judgment should not be granted to plaintiff Patricia Murphy as to liability.

Entered August 20, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge